Good morning, Your Honor. Thank you. In the first case between Mr. Nystrom and Trex, this claim construction rulings and limited Mr. Nystrom's 831 patent, limited at the literal scope to wood boards that are cut from a log. And they also limited the term manufactured as a result of the wood board cut from a log limitation to be limited to woodworking techniques. The second process followed, the second case, the one we're reviewing today, followed exactly the same process, right? It made the composite boards in exactly the same way as they were made in the first case? No, we don't believe they're made exactly the same way, Your Honor. What happened... They're made by basically an extrusion process, right? Yes, Your Honor. So to that extent, it's identical. To that extent, it is identical. And the composition is partly polymer and partly sawdust? Yes. Roughly 50-50? Correct. So then doesn't that mean that with respect to whether it's a board as defined previously or not, that there's no significant difference in the later product from the earlier product? Your Honor, there are some very significant differences. What's the difference? Not with respect to the claim limitations that were dispositive in the first case. Well, Your Honor, we believe with respect to numerous claim limitations, including the ones that were dispositive in the first case. The first case only got to the level of literal infringement because this court held that Mr. Nystrom waived... Waived doctrine of equivalence, yes. Now, what happened in the second, the new products, and I'll point you to several places in the record, there was a decision by Trex that they needed to make the product more like real wood or they weren't going to make it in the marketplace. There's numerous memos and customer studies that happened after the first case. Well, what does it have to do with the question that Judge Rader asked you of what is the difference with regard to the two dispositive claim limitations between the former Trex product and the later Trex product? Your Honor, with respect to those two claim limitations, wood boards that are cut from a log are very consistent along their top surface. They have a wood grain across their top surface and those are the exact, those are the things that Trex has changed in their secondary product to try to make them as close to a wood board cut from a log as they could with respect to the look, to the feel, to the overall structure of the product. But the process of manufacturing, the composition is the same, so why doesn't res judicata apply because your stipulation of non-infringement is exactly the same in the first as in the second case? Your Honor, I believe... And I'm saying then the ITC erred in not applying res judicata. Why isn't that the case? Well, we believe this court's case law makes it clear that original judgment only covers the products that are in that case and any colorable changes. We believe numerous claim limitations have been implicated by the new Trex products. Even if this court was to rule that we're only interested in the extrusion aspects of the claim, we still believe that they have been, the original boards were very wavy on their top surface and inconsistent on their top surface. The new ones, as admitted by Trex below, are very consistent as if they were planed by a woodworking technique, even though they're extrusion. They have a wood grain along the top. Yes, the graining process, it looks more wood-like. But that's not the processes we're dealing with. We're dealing with the composition, the extrusion, and we're dealing with the concaveness. None of that's changed from one to another. It looks more like wood in the second case than in the first case. But that's not the claim limitations that you waived infringement on in the first case. And why doesn't that waiver apply just as much to the limitations in this case? Why isn't res judicata? Your Honor, with all due respect, the claims in this case are not method claims. The claims in this case are apparatus claims. I understand that, and our court construed, nonetheless, to read a process into the terms manufactured by. Well, we understand your claim construction as meaning that the proper comparison would be to take a look at an extruded board and compare it to an extruded board that's designed to mimic real wood and compare it to a wood board as defined in the claim. We don't believe the proper comparison under your Honor's case law is to look at the underlying manufacturing process. It should be because of the nature of the claim. In our claim construction, essentially read that process in. Almost made it a product by process claim. Well, we don't believe, Your Honor, it is a product by process claim. Of course it's not. But isn't that the effect of the claim construction? We don't believe so, Your Honor. Right or wrong, that's what binds us, that claim construction. We certainly accept the claim construction and have only brought a case on the doctrine of equivalence. That's why this is only a doctrine of equivalence case and only on new products where Trex has admitted that they have made numerous changes to the product for the specific purpose of making them an exact substitute for wood. If the limitations, claim limitations, have not changed from one case to another and you waived infringement on those limitations in the first one, res judicata applies. Well, Your Honor, no, because we didn't. I believe that would be mixing issue preclusion with claim preclusion. We never reached the issue of the doctrine of race. I'm sorry. We never reached the issue in the first case of ever comparing the underlying manufacturing methods with wood cutting from a log. That issue was never reached. It was only waived. It's my understanding from this court's law that that issue that you raised would be a problem for us if there were issue preclusion because we already would have litigated if extrusion was similar to woodworking or not. But that issue never came up, was never heard by this court, was never raised below because it was considered waived. I believe that argument, Your Honor, with all due respect. But if it was waived once, it's waived by a stipulation, you saying, we agree there is no infringement. If that has not changed, why doesn't that statement of non-infringement apply just as much the second time as the first time? Your Honor, if we were here trying to bring a doctrine of equivalence case on the first products, I wouldn't be here today. The only reason we're here is because of this court's case law that when material changes are made to a product, you don't get an unfettered license. TREC's position is they can copy anything in Mr. Nystrom's patent as long as they don't use real wood cut from a log. There have been dramatic copying of the bottom configuration of all kinds of things. It's not illegal to copy somebody's patent if there's one limitation that's not met in the copied product. Yes, Your Honor, that's true. If there's no literal infringement, but we're only here under the doctrine of equivalence. And that issue has never been litigated. These are brand new products. But it's been waived. No, not in this case, Your Honor. It hasn't been waived. It was waived in the first case. It was waived in the first case, correct, Your Honor. And that applies to us. That binds us. Right or wrong, that binds us. And if the same provisions are found in the second, why doesn't that waiver apply just as? First of all, we've never admitted and we don't agree that the underlying process, other than as Chief Judge Michelle has pointed out, is still extrusion. But in order to make it mimic a wood board cut from a log, the underlying technology was dramatically changed. We don't concede that they're using the same process. We have all kinds of stuff from the record that they've changed their extrusion process in order to make it more like wood. There's never been a determination that the process they're using today and the board that they are using is somehow not equivalent under the doctrine of equivalent. Isn't your problem that in the first case, you could have pursued an equivalence theory in addition to the literal infringement theory, but for whatever reasons, you chose not to. And by not having that fallback doctrine of equivalence theory in the first case, you took a risk. You were in effect betting that you would win. You were so confident you would win on literal infringement that you didn't even bother to pursue as a fallback strategy equivalent infringement. And why shouldn't we hold you to that litigator's tactical choice in the present case? Well, Your Honor, it was a tactical choice in that case and we felt very confident. And that was a pre-Phillips ruling and we, of course, you know what happened there. We felt very confident. In fact, this court initially ruled in our favor and then after Phillips, the specification became more important. So there was a gamble there and we live with that gamble. We're not here on the Trex One products. We are here on products... But you're purporting to be here on doctrine of equivalence and it was never part of the earlier case. I don't see why you should be able to raise it now when you had a chance to raise it earlier and for whatever reason deliberately chose not to raise it. Well, the reason that we believe we're appropriately here is because of the fact that they introduced new products that were specifically designed to copy wood boards cut from a log. The original products never were designed that way. The new products, in fact, are so closely designed to do wood boards cut from a log they put oak leaves on their marketing advertising. The only reason, and that's at page 1834. But with respect to the two limitations, am I wrong or is there really no appreciable difference between the accused infringing products in the first case and the second case? Well, we believe that the underlying technology is still extrusion. We don't deny that. We think there's radical differences though... Is it still a 50-50 split? Well, I think there's more wood now, maybe closer to 60 than there was then. But, I mean, that's not really the point. But the point is the doctrine of equivalence should be designed to protect something where someone comes along and copies identically a product and just uses a different material. Mr. Nystrom's invention, even though the literal scope is limited to wood cut from a log, has nothing to do with the materials from which it's made. But he made a choice in the language of his claim. Nobody forced him to put the word board in there. When he chose to limit the scope of his broadest claim to a board, he has to live with that consequence just the way you as a litigator have to live with your own tactical choice. Agreed, Your Honor. The difference is that when his construction of board was only later in time, board could have had a much broader interpretation. He had no foreseeability at the time to tell. Something like vitiation is under the totality of the circumstances. And Trex, the district court found there was no foreseeability for Mr. Nystrom to know the board would be so limited at the time. And that's an issue that Trex has not decided to appeal. I see I'm going into my rebuttal time. Let's hear from the other side and then we'll hear from you again. Mr. Coyne. Good morning, Chief Judge, Judge Rader, Judge Prost. Mr. Nystrom cannot avoid this court's explicit claim construction by arguing that the all-elements rule is limited to only express terms. His brief is filled with that argument. In his reply, after we pointed out that it is improper, he tries to run away from it. The bottom line is he's identified absolutely  The only case he's identified is the one The only case he cites is Tronzo, which did involve an express claim limitation that was held to be vitiated. It does not hold that you cannot look at the claim construction. In fact, this court has held any number of times and the cases we cite in our brief are replete with this. The decisioning case, C-Change, CIRFOS, TIP systems, which Mr. Nystrom cites in his brief, all hold that the all-elements rule applies to the claims as construed. What's the standard for applying the missing limitation requirement of vitiation? Your Honor, the standard How do you decide if it's missing? You would have to do, essentially, an equivalence analysis on that limitation. So you redo the equivalence analysis again. Why do you do that over again? Well, Your Honor, our view, going back, this is limited to the vitiation argument. Your Honor made some points about, asked some questions about res judicata. We also argued that in our brief as an alternative ground. Yes, res judicata is a stronger argument, but you started out with vitiation. So you're going to have to live with that. Tell me how, why do you reapply? What would ever make us reapply the same test twice? Your Honor, I don't know that you would reapply the entire equivalence analysis. You would have to. The only way you can tell if there's a missing limitation is to see if it's substantially the same as what is claimed. Well, Your Honor. You would have to reapply the equivalence analysis a second time. And it's kind of strange, isn't it? So you have the doctrine of equivalence is, by definition, a missing limitation because it's substantially, it's an insubstantial variation. A missing limitation that doesn't cause infringement under the vitiation doctrine is exactly the same thing. How do I know which is, how much missing is missing? Well, let me start with the context of this case as opposed to the abstract question. First, every limitation, and this is Warner Jenkinson, every limitation is material. So you have to look at that limitation. It cannot be ignored. What we know here is that in the prior proceedings we have an admission. And yes, it relates to race judicata, but it's a piece of evidence in the case. And it relates to this issue as well. We have an admission by Mr. Nystrom in the record. But see, the problem I have is if you're asking me to reapply the doctrine of equivalence to determine if there's vitiation of the doctrine of equivalence, which is so circular as to be stupid, but apparently that's our law, you say. So I'm applying the doctrine of equivalence to see if there's a vitiation of the doctrine of equivalence. You're asking me to find facts on appeal. Well, no, Your Honor, I'm not. The district court looked at this issue. There is absolutely no issue. Isn't the doctrine of equivalence a factual issue? It is a factual issue. And you're asking me to reapply it to determine if there's vitiation. That's factual on top of factual. But there is no dispute in this case that the product is a composite. It is made from sawdust and recycled plastic waste. It is not wood. But if I'm going to make factual findings, why don't I decide 50-50 wood is as much a board as 60-40 wood or 70-30 wood? It's that line drawing again. If it's factual and you're going to let me draw the lines on the facts, why isn't 50-50 a wood board as much as 60-40 is a wood board? Because sawdust is not wood. That issue was decided previously by the district court twice, three times now. But you're trusting me now to redo the doctrine of equivalence. So we're not looking at the literal anymore. We're seeing if it's insubstantially different. I'm saying there's enough wood in there to be wood. It's been decided by this court before that there's not enough wood in sawdust to be wood. And Mr. Nystrom, as an evidentiary matter totally apart from race judicata, admitted that. Well, now, that's another story. If you want to argue race judicata to me, I'm OK. But if you're going to argue vitiation and let me make the factual finding, you're running a risk, aren't you? Very well, Your Honor. I understand. We feel that the admission is a piece of evidence in the record. And it's already very clear. And I agree. And it applies with respect to vitiation just as much as it applies with respect to race judicata. This court held previously, based on waiver, not a merits determination, that a piece of composite material made of sawdust and recycled plastic waste and extruded is not a wood board cut from a log. What if your client's next product is 90% wood and 10% something else? Are you also going to argue race judicata? Your Honor, I'm not sure on that one. Let me take an even closer issue. Let's say we took a wood board, a piece of wood sawn from a log, and put a laminated top on it, a really thin laminate, and then sanded it down. Would there be an equivalent there? Mr. Nystrom accuses us of eliminating all equivalents. I'm afraid I would have to admit on something that close, he's probably got an arguable case if it's a chunk of wood cut from a log with a laminate that's formed with this top on it. Could he get to trial on that? Perhaps. But this isn't close. This is sawdust. It's been a long time since this composite material was wood. And this court has already resolved that issue. Are we evaluating close the new product versus the old product? What are we saying close? Yes, Your Honor. And just to jump to the res judicata and try to tie the two points together, the issue is the materiality of only these two limitations. Just because there's convexity, we did not dispute that. We don't admit these terms. But we did not dispute them for purposes of summary judgment. Since when is sawdust not wood? Your Honor, it is the claims and the construction that was given the word board had to do with the integrity of a piece of wood as it's cut from a log for two reasons. Number one, in the prior rulings of this court, it's a board cut from a log to make it more efficient the way you cut the woods and get more board out of the log and so that it warps in an appropriate direction that minimizes the warpage and distortion of the material. Sawdust doesn't satisfy that, which is why this court previously held twice that this composite is not a wood board cut from a log. It is identical in terms of Your Honor's question. It is identical in composition. 40 to 60% wood and 40 to 60% plastic is what we have always used since 1991. It's what we've always used and it's what we're using now. It was the basis for the court's prior ruling. It is not a wood board cut from a log. And in terms of the materiality of those two limitations for res judicata, the court previously ruled in the Roche Palo Alto case that you look at the limitations. These are other limitations that Mr. Presta is talking about. So what if it's 70-30? If it's 70-30? I mean we're dealing with DOE here and not literal infringement. At what point do you avoid the res judicata? Well if it's 70-30 I'm not even sure a piece of sawdust is going to hang together at 70-30. The reason we do 40 to 60% both wood and sawdust is that the product will actually form when you extrude it. It will form into a shape. If you start getting more and more wood fiber or the cellulose fiber which is really what the district court found this is and that's what it is. It's so finely divided it no longer has the integrity of a wood board cut from a log. If you start increasing that sawdust percentage the board becomes more and more flaky and doesn't even form into a building material. You can't use it for anything. So 90% at least from what I understand from the record is way beyond the pale. 70% I don't know but based on my experience with the client I doubt that you can even make a board with that. But here we're talking about something that has been is now and always was in the 40-60% range and this court has held that's not a wood board cut from a log. Mr. Nystrom has already litigated this case repeatedly. He's now had three judgments. He's now had two decisions from this court. This will be the third. It is time to put an end to this litigation. That's really our position, Your Honor. The court has already decided whether it's race judicata whether it's vitiation. We feel the vitiation argument is valid but we also feel as we did at the district court that this case should never have even gotten to a full summary judgment proceeding this time because of the race judicata issue. We have an admission by this litigant on this record that they can't prove their case whether it's equivalence whether it's literal. That admission should be binding and this court in decisioning we did not argue this. It's not part of the district court's reasoning below but I know the court currently has before it a number of cases. You just decided fitness quest a few months ago. The Shire case is up. This issue of race judicata and judicial estoppel is a very live one and this case presents an excellent example to stop wasting the court's time, the district court's time and Trexa's time and money on re-litigating the same issue over and over again. Your Honor, I would be happy to recede the rest of my time to the court unless the panel has any questions about any of the other arguments that we've made in our briefs. We would stand by all of those and we would request a summary affirmance of the district court's decision below. Thank you. Thank you. Mr. Presta. Thank you. Your Honor, with respect to race judicata, I've heard numerous times in the argument that the issue was already decided that sawdust and composite is not the equivalent of wood. That's not true at all. The Trex I products were different in numerous ways including I'll direct you to A1106 of the appendix where our expert Dr. Haas explains the process differences that there is in Trex II. It's not the same process with just the wood grain put on top. In order to get the consistency that wood cut from a log has, there were numerous changes done in the production process and they're set forth on A1106. That admission in Trex I, my main point is that admission in Trex I only covered the Trex I products. That admission in no way. We didn't even know the existence of Trex II or the process behind Trex II. Certainly we couldn't admit that something was not an equivalent when it didn't even exist at the time. We're not here on the Trex I products. We're here on new Trex II products and I've read your case law as carefully as I can. I've never seen a case where the material difference is somehow only limited to the particular thing that you lost on in the previous case. I read your young engineers in the Del Mar Avionics cases, which nowhere in those cases does it suggest that the material difference has to somehow be directly related to the thing you lost on with respect to another product. I know that the panel seems to be suggesting that. I can't find that anywhere in your case law. We believe your case law, the main cases people cite for res judicata, has to do with whether there is a difference, a material difference in the product relative to claim limitations. In this case, we believe there are numerous changes in the product that are highly material to claim limitations. In the first case, Trex argued that their top was wavy and didn't have a radius of curvature. That was their summary judgment motion. They have corrected that now and made a smooth, perfectly consistent radius of curvature and they've admitted to that below. There's been never a determination that sawdust somehow is not wood. That's just a misstatement. That waiver, we accept the waiver, but the waiver is limited to the product that we were looking at at the time. Our waiver couldn't apply to new products. This process is different than the other process. By no means is it the same process other than, as you've correctly pointed out, it is an extrusion process. One of the extreme examples of Trex's position is that they, in fact, have copied even like a bottom configuration, which its original products never had. This new product implicates claims such as claim 11 and claim 15 that we couldn't even assert in the original case. There are claims in this case that we could not assert because the product did not have features that corresponded to those claims. We certainly didn't waive a doctrine of equivalence case with respect to claims 11 and 15 when we didn't even assert that those claims were infringed and we couldn't because the products were different. Alright, we thank you. We thank both counsel. We'll take the appeal on your advice. Thank you very much.